**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAMARCUS JOHNSON, ) | Case No. |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | JURY TRIAL DEMANDED |
| ) | |
| GANNETT CO., INC., JOHN JEFFRY ) | |
| LOUIS, PAUL BASCOBERT, JOHN E. ) | |
| CODY, STEPHEN W. COLL, DONALD ) | |
| FELSINGER, LILA IBRAHIM, LAWRENCE ) | |
| S. KRAMER, DEBRA A. SANDLER, and ) | |
| CHLOE R. SLADDEN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Jamarcus Johnson ("Plaintiff") by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action against Gannett Co., Inc. ("Gannett" or the "Company") and the members of Gannett's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Gannett by New Media Investment Group Inc. through Arctic Holdings LLC ("Intermediate Holdco") and Arctic Acquisition Corp. ("Merger Sub," and

together with New Media Investment Group Inc. and Intermediate Holdco, "New Media") (the "Proposed Transaction").

2. On August 5, 2019, Gannett and New Media entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which New Media will acquire Gannett for (i) 0.5427 of a share of New Media common stock and (ii) $6.25 in cash, per Gannett share.

3. On October 10, 2019, in order to convince Gannett's public stockholders to vote in favor of the Proposed Transaction, defendants caused Gannett to file a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy false and misleading.

4. For these reasons, and as set forth in detail herein, Plaintiff alleges that defendants violated Sections 14(a) and 20(a) of the Exchange Act as Gannett's stockholders need such information in order to make an informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, a stockholder of Gannett.

9.  Defendant Gannett is a Delaware corporation, with its principal executive offices located at 7950 Jones Branch Drive, McLean, Virginia 22107. Gannett's common stock trades on the New York Stock Exchange under the ticker symbol "GCI."

10. Defendant John Jeffry Louis is, and has been at all relevant times Chairman of the Board and a director of the Company.

11. Defendant Paul Bascobert is, and has been at all relevant times, the President, Chief Executive Officer ("CEO") and a director of the Company.

12. Defendant John E. Cody is, and has been at all relevant times, a director of the Company.

13. Defendant Stephen W. Coll is, and has been at all relevant times, a director of the Company.

14. Defendant Donald Felsinger is, and has been at all relevant times, a director of the Company.

15. Defendant Lila Ibrahim is, and has been at all relevant times, a director of the Company.

16. Defendant Lawrence S. Kramer is, and has been at all relevant times, a director of the Company.

17. Defendant Debra A. Sandler is, and has been at all relevant times, a director of the Company.

18. Defendant Chloe R. Sladden is, and has been at all relevant times, a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Companies and the Proposed Transaction**

20. Gannett is a media and marketing solutions company. Gannett operates through two business segments: Publishing and ReachLocal. It offers print and digital daily and non-daily publications under the USA TODAY NETWORK brand name in the United States; and Newsquest, which has print and online publications portfolio of approximately 150 news brands and 150 magazines in the United Kingdom. Gannett's operations include 110 daily the United States print products, including USA TODAY; and 150 publications in the United Kingdom. It also provides commercial printing and distribution, marketing, and data services; and owns s1 and Exchange & Mart businesses, and a specialist magazine business. Gannett also offers digital marketing solutions comprising search engine marketing, social advertising, and display advertising; software solutions, as well as presence solutions, including Websites, search engine optimization, listings management, and live chat; and WordStream, cloud-based software-as-a-service solution for local and regional businesses and agencies.

21. New Media invests in, owns, and operates local media assets in the United States. New Media's principal products include 146 daily newspapers with total paid circulation of approximately 1.5 million; 323 weekly newspapers with total paid circulation of approximately 268,000 and total free circulation of approximately 1.4 million; 132 shoppers with total circulation of approximately 3.1 million; and 581 locally-focused Websites, including Internet and mobile devices with approximately 364 million page views per month. Its principal products

also include 77 business publications; and UpCurve Cloud and ThriveHive, which provides digital marketing and business services. In addition, New Media produces niche publications that address specific local market interests, offers print and online products that offer local market news and information on various topics.

22. On August 5, 2019, Gannett and New Media issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NEW YORK & MCLEAN, Va.--(BUSINESS WIRE)--New Media Investment Group Inc. ("New Media") (NYSE: NEWM) and Gannett Co., Inc. ("Gannett") (NYSE: GCI) announced today that New Media and Gannett have entered into a definitive agreement (the "Merger Agreement") pursuant to which New Media will acquire Gannett for a combination of cash and stock (the "Merger").
>
> Under the terms of the Merger Agreement, shareholders of Gannett will receive $6.25 in cash and 0.5427 of a New Media share for each Gannett share they hold, representing total consideration of $12.06 per Gannett common share based on New Media's closing stock price as of August 2, 2019, and a premium of approximately 18% to the five-day volume-weighted average price of Gannett shares as of that date. After the close of the transaction, Gannett shareholders will hold approximately 49.5% of the combined company and New Media shareholders will hold approximately 50.5%.
>
> The Merger brings together the portfolios of two leading local newspaper companies, and includes USA TODAY, Gannett's flagship brand, and its more than 160 brands in the U.K., which will significantly expand the existing USA TODAY NETWORK. This combination will create a broad network of talented, experienced journalists poised to deliver unique and award-winning content for local communities and national audiences. The breadth and depth of each company's digital offerings will make the combined company a leading digital media player. Additionally, the joining of New Media's UpCurve and GateHouse Live businesses with Gannett's ReachLocal and WordStream subsidiaries will provide multiple, diversified marketing and revenue solutions and position the combined company as a stronger partner for advertisers and small businesses ("SMBs") in the markets served.
>
> With strategically-aligned leadership and significant scale of operations, the Merger will accelerate the combined company's digital transformation. The Merger also affords an opportunity to realize run-rate cost synergies of $275 - $300 million annually across the combined company in a judicious manner, while continuing to invest in newsrooms.

"We believe this transaction will create value for our shareholders, greater opportunities for our employees, and a stronger future for journalism. Gannett is an innovative, digitally-focused media and marketing solutions company with well-known brands worldwide. Uniting our talented employees and complementary portfolios will enable us to expand our comprehensive, hyperlocal coverage for consumers, deepen our product offering for local businesses, and accelerate our shift from print-centric to dynamic multimedia operations. We are honored to become a part of Gannett's storied history and a steward of their strong media properties into the future. We are committed to delivering significant synergies in a thoughtful manner, consistent with our shared goals for the business," said Michael Reed, New Media Chairman and Chief Executive Officer.

"The Gannett Board unanimously determined that this combination with New Media is in the best interests of Gannett shareholders, customers, audiences, and employees, providing significant and immediate value, as well as the ability to benefit from the upside potential of the combined company," said J. Jeffry Louis, Chairman of the Gannett Board of Directors. "We see numerous opportunities to leverage the combined company's enhanced scale and financial strength to continue to drive growth in the digital future. Importantly, we have found in New Media a strong partner and cultural fit for Gannett as we continue delivering on a shared commitment to journalistic excellence for the communities we serve."

*  *  *

**Compelling Strategic & Financial Benefits**

**Enhanced scale**. New Media and Gannett share a strategic vision, and the combined company's significantly enhanced scale of operations will enable it to realize this vision more rapidly, while generating value for shareholders and benefits for employees and other stakeholders. The Merger will create a leading local and national media company with 263 daily media organizations across 47 states and Guam and USA TODAY, reaching more than 145 million unique visitors every month, as measured by Comscore. This scale will meaningfully enhance the combined company's financial profile by leveraging nationwide reach and local presence to expand and deepen relationships with consumers and businesses. As a result, we will accelerate the growth of the combined company's digital revenue through innovative customer experiences and new marketing solutions for businesses, while creating an expansive journalism network with the resources required to deliver unique and award-winning content.

**Accelerate digital strategy**. New Media and Gannett believe that a digital transformation of the newspaper industry is vital to the preservation of journalism, and the Merger will accelerate the combined company's digital transformation. The breadth and depth of each company's digital offerings will make the

combined company a leading digital media player and a stronger partner for advertisers and SMBs.

**Significant synergies**. New Media and Gannett share a commitment to rationalizing costs as the media industry evolves, while continuing to invest in product development, training for newsrooms and understanding readers' needs. The Merger is anticipated to result in run-rate cost synergies across the combined company of $275 - $300 million annually, unlocking meaningful shareholder value. The majority of synergies is expected to be realized within 24 months of closing and result from the increased scale of the new organization, sharing of best practices, leveraging existing infrastructure, facility rationalization and other judicious cost reductions.

**External Management Agreement**. New Media and FIG LLC, an affiliate of Fortress Investment Group (the "Manager"), have amended the external management agreement to set the termination date as December 31, 2021. The amendment, as described in more detail below, also reduces the incentive fee rate payable to the Manager for the remainder of the term.

**Leadership and Governance**

The combined company's management team will be led by New Media's current Chairman and Chief Executive Officer, Michael Reed. Alison Engel, Gannett's current Chief Financial Officer, is expected to serve as the Chief Financial Officer of the combined organization upon closing. Gannett's newly appointed Chief Executive Officer, Paul Bascobert, will become Chief Executive Officer of the combined company's operating subsidiary. The rest of the combined company's senior executive team, which is expected to be composed of highly experienced leaders from both companies, will be announced at a later date.

Mr. Bascobert was the President of XO Group from 2016 until its sale to Permira Equity in 2019. During his tenure, he helped lead the company's transformation from a media company to a marketplace business. Prior to XO, Mr. Bascobert led sales, service, and marketing for the Local Businesses segment at Yodle from 2014 until 2016. Before that, he spent four years at Bloomberg LP as President of Bloomberg Businessweek from 2010 until 2014, in addition to serving as Chief Operating Officer of the Media Group from 2011 to 2014. Mr. Bascobert joined Bloomberg from Dow Jones & Co. where he was Senior Vice President of Operations from 2006 until 2007 and Chief Marketing Officer from 2007 until 2009.

The combined company's Board of Directors will have nine members, including Mr. Reed as Chairman, five independent directors from New Media, and three independent directors from Gannett. Mr. Kevin Sheehan, who currently serves as New Media's Lead Director, will serve as the combined company's Lead Director. New Media has been actively engaged in a director search and expects

7

to announce two additional independent directors prior to closing. The companies believe that diversity can strengthen board performance and New Media is actively searching for women and other candidates with diverse backgrounds and experiences.

After the closing of the Merger, both New Media and its operating subsidiary GateHouse, will be rebranded and operate under the "Gannett" brand. The combined company will be headquartered in McLean, Va., with a continued corporate presence in existing locations.

**The Materially Misleading Proxy**

23.     Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Gannett's stockholders.  The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

24.     The Proxy omits material information regarding the Company's financial projections.  For example, the Proxy sets forth:

> [o]n May 31, 2019, the Gannett Board held a meeting, with members of Gannett's senior management and representatives of Greenhill, Goldman Sachs [ ] in attendance. . . [with] [r]epresentatives of management discuss[ing] with the directors financial performance trends for 2019 and an updated sensitivity analysis for the remainder of 2019.

Proxy at 58.  The Proxy, however, wholly fails to disclose the financial performance trends for 2019 that Gannett management discussed with the Board at its May 31, 2019 meeting. Additionally, the Proxy fails to disclose (i) the assumptions underlying the updated sensitivity analysis for the remainder of 2019; (ii) the assumptions underlying the pre-sensitivity analysis for the remainder of 2019; (iii) whether the sensitivity analysis resulted in a downward adjustment to the Company's projections; and (iv) whether the sensitivity analysis for the remainder of 2019 was incorporated into the Gannett standalone forecasts that Gannett senior management provided to the Board in connection with its evaluation and approval of the Merger

Agreement, and provided to Gannett's financial advisors to utilize in connection with their respective financial analyses and fairness opinions.

25. In addition, the Proxy fails to disclose whether any members of Gannett management have secured positions with the combined company, and the timing and nature of all communications regarding future employment and directorship of the Company's executives, including who participated in all such communications.

26. Specifically, the August 5, 2019 press release announcing the Proposed Transaction sets forth:

> The combined company's management team will be led by New Media's current Chairman and Chief Executive Officer, Michael Reed. ***Alison Engel, Gannett's current Chief Financial Officer, is expected to serve as the Chief Financial Officer of the combined organization upon closing. Gannett's newly appointed Chief Executive Officer, Paul Bascobert, will become Chief Executive Officer of the combined company's operating subsidiary***.

Emphasis added. Yet, the section of the Proxy states:

> As of the date of this joint proxy statement/prospectus, ***none of the Gannett executive officers has entered into any agreement with New Media or any of its affiliates regarding employment with,*** or the right to purchase or participate in the equity of, ***New Media or one or more of its affiliates***.

*Id*. at 132 (emphasis added). These statements conflict with the information set forth in the press release and mislead stockholders into thinking the Company's officers have not secured employment with New Media or its affiliates. The Proxy must clarify that defendant Paul Bascobert and Alison Engel are in fact being retained by New Media or its affiliates upon consummation of the Proposed Transaction.

27. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that

information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

28. The omission of the above-referenced material information renders the Proxy false and misleading, including, *inter alia*, the following sections of the Proxy: "Background of the Merger," "Certain Gannett Unaudited Prospective Financial Information," "Opinions of Gannett's Financial Advisors," and "Interests of Gannett Directors and Executive Officers in the Merger."

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

29. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Gannett is liable as the issuer of these statements.

31. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

32. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a

full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

33. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

34. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

35. Because of the false and misleading statements in the Proxy, Plaintiff and Gannett stockholders are threatened with irreparable harm.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

36. Plaintiff repeats all previous allegations as if set forth in full.

37. The Individual Defendants acted as controlling persons of Gannett within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Gannett, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

11

had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

40.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

41.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

42.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Gannett's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Gannett, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until

    defendants disclose and disseminate the material information identified above to Gannett stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 23, 2019    **O'KELLY ERNST & JOYCE, LLC**

    By */s/ Ryan M. Ernst*
      Ryan M. Ernst (#4788)
      901 N. Market St., Suite 1000
      Wilmington, DE 19801
      Tel.: (302) 778-4000
      Email: rernst@oelegal.com

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*